IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WAYNE RESPER, <br>         Plaintiff, <br> v. <br><br> OFFICER DEREK A. BAER, et al., <br>         Defendants. | * <br><br> *   CIVIL ACTION NO. PJM-13-2224 <br><br> * <br><br> *** |

**MEMORANDUM OPINION**

Pending is a Motion to Dismiss, or in the alternative Motion for Summary Judgment filed on behalf of Defendants CO II Shawn Murray, CO II Martin Cady, CO II Christopher Anderson, CO II Dorothy Bittinger, and Sergeant Derek Baer.[1] ECF No. 10. Plaintiff has responded. ECF No. 22. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion filed by Defendants will be granted.

Background[2]

Plaintiff states that on October 7, 2010, Defendants Cady and Murray failed to follow a doctor's order directing that Plaintiff be "double cuffed." Plaintiff states that Cady and Murray's failure to comply with the double cuff order exacerbated his serious wrist injury and contributed to "possible permanent" wrist injuries. ECF No. 1.

---

[1] The Clerk shall amend the docket to reflect the full names of Defendants.

[2] Plaintiff's Complaint also contained a claim that on July 30, 2010, Officer Darby used excessive force against him by pulling Plaintiff's hands through the food slot, banging Plaintiff's wrists against the food slot frame, and unnecessarily placing the handcuffs tightly, causing swelling, pain, and exacerbating an already serious injury to his wrist. ECF No. 1. Plaintiff subsequently withdrew his complaint against Officer Darby. ECF Nos. 17 & 19.

1

Plaintiff states that from April 2010 to and including July 1, 2011, Cady deliberately and maliciously refused to comply with medical orders to provide Plaintiff ice to reduce the pain and swelling in his wrists. *Id*.

Plaintiff alleges that on January 18, 2011, Defendants Bittinger and Murray searched Plaintiff and illegally seized legal documents, including affidavits and declarations which corroborated the "malicious misconduct on the part of guards against whom [he] had written complaints." Plaintiff states Bittinger and Murray committed "conversion" by failing to return the seven pages of legal materials, violating Plaintiff's First Amendment right to access the courts and Fourteenth Amendment right to due process. *Id*.

Plaintiff states that on January 19, 2011, Defendant Baer deliberately and maliciously used excessive force against him by using extremely tight handcuffs which disrupted his circulation, causing extreme pain and swelling and exacerbating Plaintiff's serious wrist injuries. Plaintiff states that during his encounter with Baer, Baer endangered Plaintiff's safety by advising another inmate that Plaintiff was going to cause problems for that inmate if Plaintiff remained in the cell because Plaintiff "was a troublemaker and a dick." Plaintiff states that Baer's conduct "was retaliatory in that [he] attache[d] previously filed complaints against him:...." *Id*.

Plaintiff states that on January 19, 2011, Defendant Anderson failed to intercede on Plaintiff's behalf to prevent Baer's use of excessive force against him after Plaintiff advised Anderson that the handcuffs were extremely tight and had cut off the circulation in Plaintiff's hands. Plaintiff states that Anderson had a duty to call for a supervisor as Plaintiff requested. *Id*.

Defendants provide the following information.

1.  Failure to comply with medical orders: Cady and Murray aver that they did not fail to

comply with medical orders regarding the double handcuffing of Plaintiff. ECF No. 10, Exs. 1 & 2. Plaintiff was seen the day after the October, 2010 incident for a scheduled medical appointment. At that time Plaintiff complained of an infected finger for which he was supplied anti-fungal ointment. Plaintiff did not offer any complaints regarding his wrists. *Id*., Ex. 3, p. 1.

Plaintiff filed an Administrative Remedy Request (ARP) regarding his complaints that correctional personnel routinely failed to double-cuff him in violation of medical orders. A hearing was held on May 4, 2011, by Administrative Law Judge (ALJ) Kimberly Farrell regarding Plaintiff's complaint. *Id*., Ex. 4. The ALJ found that on June 2, 2010, a medical order was entered requiring that Plaintiff be double-cuffed in the back. *Id*., Ex. 4. Double-cuffs, consisting of two sets of handcuffs, would alleviate pressure on Plaintiff's wrists. The order was for one year. A copy of the order was posted on Plaintiff cell door and whenever he was moved to another cell the order was re-posted. *Id*., Ex. 4. The order was also placed in the inmate database. *Id*. The ALJ found that Plaintiff was evaluated by medical staff on July 13, July 26, and September 26, 2010. The notes do not reflect that Plaintiff complained of any ongoing problems with his wrists due to lack of double-cuffing and there were no complaints that the order was being ignored. The ALJ found no Eighth Amendment violation and dismissed Plaintiff's grievance. *Id*.

Cady denies that he refused to comply with any medical order regarding supplying ice to Plaintiff. *Id*., Ex. 1.

2.      Legal Papers

Murray and Bittinger aver that all cell searches are properly conducted. *Id*., Ex. 2 & 5. On January 18, 2011, Plaintiff's cell was searched and seven sheets of paper were confiscated from Plaintiff because the paper contained writing which the officers believed were possible threats to the security of the institution. *Id*., Ex. 5. Defendants aver that the papers did not contain legal

declarations or affidavits. The papers were turned over to the NBCI Intelligence Department for their review. *Id.*

    3.    January 19, 2011 incident

Baer avers that he did not place handcuffs on Plaintiff in any manner that would have caused him to experience pain, disrupt his circulation or that the handcuffs used were extremely tight. He also denies threatening or harassing Plaintiff and denies calling Plaintiff a troublemaker. Baer indicate he has received enhanced training on the proper utilization of handcuffs as a member of the NBCI Tactical Unit. *Id.*, Ex. 6. Plaintiff was seen for physical therapy on his hands and wrists on January 20, 2011. *Id*, Ex. 3, p.2. He did not complain that he had recently reinjured his wrists. *Id.* Plaintiff advised medical staff the following day, January 21, 2011, that his wrists hurt for two years and he had undergone physical therapy for two years and had "recently been cuffed too tightly." *Id.*, Ex. 3, p. 3. Plaintiff was evaluated by medical staff on February 3, 2011, and indicated there had been overall improvement in both hands. Plaintiff's range of movement in both wrists were within normal limits. No edema or erythema atrophy was noted. Plaintiff's carpal tunnel syndrome was improving. *Id.*, Ex. 3, p. 6.

**Standard of Review**

A.    Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts

consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.   Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

A. Failure to comply with medical orders

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical

need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The instant case does not concern the quality of medical care provided; rather, it concerns an allegation that correctional staff have ignored valid medical orders. "Section 1983 liability on the part of the supervisory defendants requires a showing that: (1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately

interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir.1990) (internal citations omitted); *see also Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir.1984).

Plaintiff asserts that the refusal to handcuff him using a double set of handcuffs and provide him ice on several occasions caused him physical pain and emotional distress. The evidence before this Court, however, does not support these allegations. Defendants deny that they failed to comply with the medical orders as alleged. Plaintiff does not show that he was in any apparent distress on the occasions he was not handcuffed using double cuffs. Rather, he indicates that he advised the officers of the double cuffing order, they ignored it, and thereafter he complained of pain. His medical records do not support his contention. He was examined by medical staff several times during the period of time he alleges the medical order regarding cuffing was not consistently followed and failed to complain of injury. Further, he failed to file any ARP for over three months when he alleges Defendants regularly failed to comply with his medical orders.

The record also reflects that Plaintiff was provided ice during the time at issue, although perhaps not on every occasion that he requested it. Moreover, Plaintiff does not allege that he was suffering from so serious a medical condition that handcuffing him from behind with a single set of handcuffs would be an obvious cause of pain, *e.g.,* Plaintiff was not suffering from a dislocated shoulder or broken arm. There is simply no evidence that Plaintiff's double-cuffing and ice medical orders were medical orders issued to treat a serious medical need. Moreover, in the instant case there is no evidence Plaintiff suffered any real harm as a result of Defendants' actions. Defendants are, thus, entitled to summary judgment in their favor.

B.     Confiscation of Legal Papers

Plaintiff's claim that property, including legal materials, were destroyed is also unavailing. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[3] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[4]   Even if Plaintiff's property were improperly destroyed, such a claim does not rise to a constitutional violation.

To the extent Plaintiff's allegation is construed as denial of access to the courts, the claim similarly fails. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to

---

[3] Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office.

[4] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis,* 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Plaintiff's postulation that with the unspecified lost legal materials, which he only identifies as affidavits and declarations, his civil rights case then pending before this Court would have survived the summary judgment stage, is speculative at best. Although Plaintiff alleges legal materials were missing, he has failed to demonstrate an actual injury from the loss of those materials.

      C.      Excessive Force/Failure to Protect

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 556 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 556 U.S. at 37.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of

harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997).

Defendants deny that Plaintiff was assaulted as alleged in the complaint. Defendant Baer explains that he handcuffed Plaintiff in compliance with policy and did not intentionally apply the handcuffs too tightly. The need for application of force (cuffing) was necessary to secure Plaintiff to be escort him from his cell. There is no objective evidence that Plaintiff was injured as a result of the application of the handcuffs. Additionally, there is no evidence that Baer acted with a sufficiently culpable state of mind to cause Plaintiff harm.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit any credible evidence to support his claim, or to put the material fact of this case--the use of force against Plaintiff--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). Here, Defendants were complying with prison regulations regarding prisoner escort and applied handcuffs to Plaintiff. Plaintiff's objective injuries were at most minor consisting of a mark or swelling on his wrists, according to Plaintiff's cellmate. There is simply no evidence that Baer or

acted maliciously or sadistically to cause harm to Plaintiff. Nor is there any evidence that Anderson drew any inference that Plaintiff was subjected to a substantial risk of serious harm. Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *Rich*, 129 F.3d at 339-40. In light of the foregoing, Defendants are entitled to summary judgment.

    D.    Harassment

Plaintiff alleges that Baer threatened and harassed him by calling him a trouble maker and telling his cellmate that he would have problems if Plaintiff remained in the cell. "[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged from claimed verbal harassment and abuse by police officer). Plaintiff's allegations that correctional officers harassed him is not enough to state a § 1983 claim. Such a claim only accrues when the threats or threatening conduct result in a constitutional deprivation. *See Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983).

## Conclusion

The dispositive motion filed on behalf of Defendants will be granted. A separate Order follow.

August 27, 2014

    /s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE